**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **CAPITOL ENVIRONMENTAL** | ) | |
| **SERVICES, INC.,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:07cv788** |
| | ) | |
| **NORTH RIVER INSURANCE CO.,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

At issue on cross-motions for summary judgment in this insurance coverage dispute are the following questions:

1. Whether an insurer has a duty to defend its insured against a third party complaint where, as here, the third party complaint fits within the policy coverage, but the insurer contends that facts extrinsic to the third party complaint preclude coverage;

2. Whether a policy exclusion for "operations including . . . transportation, treatment and disposal, documentation and management of waste handling" clearly and unambiguously applies to bar coverage for injuries sustained by third parties in a traffic accident involving an empty waste disposal truck operated by the insured's subcontractor; and

3. Whether the insurer acted in bad faith in denying its insured a defense.

For the reasons that follow, summary judgment on plaintiff's duty to defend claim must be granted in favor of plaintiff and denied as to defendant. A ruling on plaintiff's duty to indemnify claim must be deferred. Finally, summary judgment on plaintiff's bad faith claim must be granted in favor of defendant and denied as to plaintiff.

## I.

The material facts are undisputed. The antagonists in this insurance coverage dispute are plaintiff Capitol Environmental Services ("Capitol"), a Virginia company in the business of waste

material management, and defendant North River Insurance Company ("North River"), an insurance company licensed to do business in Virginia.  To understand the antagonists' dispute, some additional entities and facts must be introduced and described.

Central to the coverage dispute at bar is a July 11, 2002 subcontract between Capitol and Earth Tech, Inc. ("Earth Tech"), in which Capitol agreed to provide hazardous material transportation and disposal services at St. Marks Refinery in St. Marks, Florida ("the subcontract"). According to this subcontract, Capitol was to transport 15,000 to 20,000 gallons of "benzene contaminated liquid" to an acceptable facility for disposal.  To accomplish this task, Capitol hired Freehold Cartage, Inc. ("FCI") to pick up and transport the waste from the site to the disposal facility.  In sum, Earth Tech, the general contractor at the refinery, contracted with Capitol to dispose of waste at the refinery.  Capitol in turn contracted with FCI to provide the actual transportation and disposal services.

Just before dawn on September 25, 2002, FCI employee Peter Blash arrived at St. Marks refinery, the entrance to which was located on Florida Highway 363, to collect and transport waste from the site.  Blash attempted to back his empty tractor-trailer from the highway into the refinery with the aid of two Earth Tech flag men, who directed traffic on the highway while Blash's tractor-trailer blocked both highway lanes.  As general contractor of the St. Marks Refinery site, Earth Tech also posted warning signs to alert oncoming traffic of the obstruction.  Notwithstanding these precautions, Annette Carey, driving a personal automobile, collided with Blash's trailer and was injured.

Carey and her husband filed suit against Blash, FCI, and Earth Tech for Carey's injuries and

-2-

her husband's loss of consortium (the "Carey suit").[1]   The Careys alleged that Earth Tech "negligently undertook to direct traffic on State Road 363" and failed to provide "adequate visual warning devices" to prevent the accident.  Carey Complaint at ¶¶ 13, 17.  The Carey complaint also stated that Blash was "an employee of Freehold Cartage, Inc. and/or Earth Tech, Inc." who was "acting within the scope of his employment with Freehold and/or Earth Tech at all times." *Id.* at ¶¶ 5, 21.  Hence, the Careys sued Earth Tech both for its own negligence and for the negligent acts of Blash, believing, mistakenly as it turned out, that Blash may have been an Earth Tech employee. Capitol was not named in the Carey suit.

Earth Tech contacted Capitol seeking indemnification for the Carey suit on the ground that the subcontract between Capitol and Earth Tech required Capitol to (i) purchase insurance to protect both Capitol and Earth Tech[2] and (ii) defend and indemnify Earth Tech for all claims "arising out of the acts, errors, or omissions of the Subcontractor," *i.e.*, Capitol or its subtier contractors, including FCI.  Earth Tech, believing that it was covered under Capitol's automobile and excess insurance policies from United States Fire Insurance Company ("U.S. Fire"), tendered its defense of the Carey suit to U.S. Fire.  Before U.S. Fire responded, Earth Tech filed a declaratory action in this district, which resulted in the grant of summary judgment in favor of U.S. Fire on the ground that the U.S. Fire policy did not provide coverage.  *Earth Tech, Inc. v. U.S. Fire Ins. Co.*, 407 F.

---

[1] The Carey suit was filed in the Second Judicial Circuit in and for Wakulla County, Florida.

[2] In this respect, Earth Tech claimed that Capitol was required to obtain insurance to protect Capitol and Earth Tech for "claims under Worker's Compensation, disability benefit and other similar employee benefit acts; claims for damages because of bodily injury, occupational sickness or disease, or death of its employees or any other person; claims for damages which are sustained by any person as a result of the actions of [Capitol]; and claims for damages because of injury to or destruction of tangible property; including loss of use resulting therefrom."

Supp. 2d 763 (E.D. Va. 2006).  No appeal was pursued.

Seeking indemnification for the Carey suit directly from Capitol, Earth Tech brought a third-party complaint against Capitol in August 2005, alleging breach of contract from Capitol's "failure to defend, indemnify, and hold harmless Earth Tech in the Carey Lawsuit."  Its second amended complaint, filed on January 13, 2006, alleged (i) breach of contract, (ii) negligent misrepresentation, (iii) fraudulent misrepresentation, (iv) contractual indemnity, and (v) common law indemnity.  In its breach of contract claim, Earth Tech specifically alleged that Capitol failed "to defend, indemnify, and hold harmless Earth Tech in the Carey Lawsuit, wherein [the Careys] allege Earth Tech is vicariously liable for the acts of Defendant Blash, an employee of Subtier Contractor Freehold Cartage."  Third-party Complaint at ¶ 23.

After receiving Earth Tech's third party complaint, Capitol's attorneys sent a copy to Robert Kelso, the insurance agent who had procured Capitol's insurance policies with North River and U.S. Fire, both subsidiaries of Crum & Forster Insurance Company ("Crum & Forster").  In August 2005, Kelso sent the complaint to U.S. Fire, which denied coverage under Capitol's automobile and excess liability policies.  In its letter denying coverage, U.S. Fire also noted that, while Capitol had not submitted a claim under the North River policy, that policy's terms would also preclude coverage for Capitol.  On February 3, 2006, after Earth Tech had amended its third-party complaint,[3] Kelso forwarded this complaint to Crum & Forster, requesting a response regarding Capitol's right to coverage of these new claims.  He listed both the North River and U.S. Fire policy numbers in the reference line.  Apparently believing a claim had been made only pursuant to the U.S. Fire policy,

---

[3] All further references to the Earth Tech third-party complaint in this opinion refer to the amended third-party complaint.

Crum & Forster, on March 28, 2006, again disclaimed liability under that policy, noting in a footnote that the North River policy would also bar coverage for Capitol.

On April 3, 2006, Kelso responded, clarifying that in light of the new claims in the amended Earth Tech complaint, Capitol also sought coverage determination under the North River policy, under which North River agreed to "pay those sums that [Capitol] becomes legally obligated to pay as damages because of 'bodily injury'[4] or 'property damage'"[5] that were "caused by an 'occurrence'[6] that takes place in the 'coverage territory.'"   On June 23, 2006, North River disclaimed any obligation to defend or indemnify Capitol on Earth Tech's third-party complaint, on the grounds that (i) the allegations in the underlying action did not constitute "bodily injury" or "property damage"; (ii) the allegations in the underlying action did not constitute an "occurrence";[7] and (iii) the allegations in the underlying action were excluded from coverage under the "professional services" exclusion."[8]   Accordingly, North River declined to defend or indemnify Capitol with respect to the

---

[4] "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

[5] "Property damage" is defined as "[p]hysical injury to tangible property" and "lose of use of tangible property that is not physically injured."

[6] "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

[7] Although North River initially rejected Capitol's coverage request on the ground that "Earth Tech's claims arising from Capitol's alleged failure to fulfill its contractual obligations did not constitute 'bodily injury' or 'property damage' caused by an occurrence,'" it appears to have abandoned that position, or at least does not appear to be seriously pursuing it at this point.  This is understandable, as this argument is clearly without merit; the underlying injuries for which Earth Tech sought indemnification clearly constituted "bodily injury" caused by an "occurrence," as Ms. Carey was physically injured in a car accident.

[8] The policy excluded coverage for "'bodily injury' . . . due to the rendering of or failure to render any professional service."  "Professional services" are defined as "operations including

Earth Tech third-party complaint against Capitol.

On August 31, 2006, Kelso asked North River to reconsider its position, contending that Capitol's subcontract with Earth Tech was an insured contract.[9]  Receiving no response, Kelso sent a follow-up email to North River on September 6, 2006.  On September 13, 2006, North River again disclaimed liability to Capitol under the policy, reiterating its positions that the underlying action had not alleged "bodily injury," "property damage," or an "occurrence" as required by the policy, and that the "professional services" exclusion barred coverage for Capitol in the circumstances.  North River also stated that it was disclaiming liability because Earth Tech was seeking indemnification for its own negligence, rather than for the negligence of Capitol or its agents.

On December 8, 2006, Capitol's counsel requested clarification and reconsideration from North River, specifically concerning the insured contract and professional services provisions.  By January 4, 2007, Capitol had not yet received a response to its December 8 letter, and once again Capitol wrote to North River, suggesting that North River's delay could subject it to liability for unfair claims settlement practices under Va. Code § 38.2-510.[10]  North River finally responded on

consulting, testing, analysis, field services, transportation, treatment and disposal, documentation and management of waste handling."

[9] The policy specifically excluded from coverage any "'[b]odily injury' or 'property damage' for which the insured is obligated to pay as damages by reason of the assumption of liability in a contract or agreement."  This contract exclusion was subject to an exception; it did not apply to liability Capitol "[a]ssumed in a contract or agreement that is an 'insured contract,'" which is defined as any "part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement."

[10] Va. Code § 38.2-510(A)(2) provides that "(f)ailing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies" can constitute an unfair claim insurance settlement practice.

February 16, 2007, denying coverage and specifically disclaiming liability, for the first time, under the insured contract exception.  Capitol again requested that North River reconsider its position, but North River declined to do so.

Meanwhile, there was some progress in the Florida litigation, including two events particularly pertinent here.  On March 29, 2007, the Second Judicial Circuit for Wakulla County, Florida, granted Earth Tech's motion for partial summary judgment in its third-party complaint against Capitol, holding that Capitol had breached the subcontract by failing to procure adequate insurance to cover the work in the subcontract.  Then, on April 25, 2007, the Florida court granted Capitol's motion for summary judgment on the negligent misrepresentation, fraudulent misrepresentation, and common law indemnity claims.  Further, the Florida court denied Capitol's motion for summary judgment on the contractual indemnity claim.  This claim apparently remains unresolved.

Finally, on July 13, 2007, Capitol filed a complaint in the instant action, claiming that it has incurred legal fees and expenses of $40,866.99 as a result of having to defend the Earth Tech complaint.[11]  Specifically, Capitol, in its complaint, seeks the following relief:

1.   A declaratory judgment finding that North River breached the insurance policy's terms, that North River had a duty to defend and indemnify Capitol in the underlying action, and that North River was required to pay Capitol's attorney's fees in this and the underlying action;

2.   $1,000,000 in damages as a result of North River's breach; and

3.   Attorney's fees in litigating this matter, on the ground that North River acted in bad faith in denying coverage.

The parties have filed cross-motions for summary judgment.  As these motions have been

_____

[11] North River concedes the reasonableness of these fees.

fully briefed and argued, they are now ripe for disposition.

## II.

The parties agree their dispute is appropriately resolved on summary judgment because "there is no genuine issue as to any material fact." Rule 56(c), Fed. R. Civ. P. Rather, the dispute here turns entirely on whether the uncontested facts entitle either party to judgment as a matter of law.

The parties also agree that Virginia law applies to the resolution of this dispute, as it is well-settled that the forum state's choice-of-law rules apply in a federal diversity jurisdiction[12] and Virginia's choice-of-law rules dictate that "generally, the law of the place where an insurance contract is written and delivered controls issues as to its coverage."[13] Here, there is no dispute that the insurance policy was delivered to Capitol in Virginia; thus, Virginia law governs issues of interpretation and breach of the insurance contract.

## III.

The initial question presented is whether North River breached its duty to defend Capitol in connection with claims Earth Tech asserted against Capitol in its third party complaint. The legal principles governing resolution of this issue are well-settled in Virginia. The governing rule is that the duty to defend depends on whether the allegations in the complaint — here, Earth Tech's third party complaint — potentially fall with in the policy's coverage. *See VEPCO v. Northbrook Property & Cas. Ins.*, 475 S.E.2d 264, 265 (Va. 1996) (quoting *Lerner v. Safeco*, 245 S.E.2d 249, 251 (Va. 1978)) (stating that the duty to defend "arises whenever the complaint [against the insured] alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the

---

[12] *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

[13] *Buchanan v. Doe*, 431 S.E.2d 289, 291 (Va. 1993).

policy"). This rule, sometimes referred to as the Eight Corners Rule, requires a court to compare the four corners of the insurance policy against the four corners of the underlying complaint; if any allegations may potentially be covered by the policy, the insurer has a duty to defend. *See America Online, Inc. v. St. Paul Mercury Ins. Co.*, 207 F. Supp. 2d 459, 465 (E.D. Va. 2002).[14] And, it is well-recognized that the duty to defend is broader than the duty to indemnify inasmuch as the duty to defend turns on a complaint's allegations whereas the duty to indemnify requires established or litigated facts. A duty to defend limited to and coextensive with the duty to indemnify would be essentially meaningless; insureds pay a premium for what is partly "litigation insurance" designed to "protect[] the insured from the expense of defending suits brought against him." *Perdue Farms, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 448 F.3d 252, 258 (4th Cir. 2006). Thus, there may be some instances in which an insurer — based on a complaint's allegations — has a duty to defend, but will ultimately turn out not to have a duty to indemnify.

Yet another important principle governing resolution of this dispute is that, as a contract, an insurance policy is subject to rules of contract interpretation. *Harleysville Mut. Ins. Co. v. Dollins*, 109 S.E.2d 405, 409 (Va. 1959). Hence, because insurance policies are typically drafted by insurers, any ambiguous terms are "construe[d] in favor of coverage or indemnity and against a limitation of coverage." *United Servs. Auto Ass'n. v. Webb*, 369 S.E.2d 196, 198 (Va. 1988). It is thus "incumbent upon the insurer to employ exclusionary language that is clear and unambiguous." *Am. Reliance Ins. Co. v. Mitchell*, 385 S.E.2d 583, 585 (Va. 1989). In short, while a party seeking

---

[14] The Eight Corners Rule is a combination of the Exclusive Pleading Rule, under which "an insurer's duty to defend is determined solely by the claims asserted in the pleadings" and the Potentiality Rule, under which "an insurer's duty to defend is triggered if there is any 'potentiality' that the allegations in the pleadings could state a claim that would be covered by the policy." *Solers, Inc. v. Hartford Cas. Ins. Co.*, 146 F. Supp. 2d 785, 791 (E.D. Va. 2001).

coverage bears the ultimate burden of proving by a preponderance of the evidence that it is entitled to coverage, the insurer bears the burden of proving that any coverage exclusion applies.  *See Town Crier, Inc. v. Hume*, 721 F. Supp. 99, 101 (E.D. Va. 1989).

These principles, applied here, compel the conclusion that North River had a duty to defend Capitol against the Earth Tech third party complaint.  The third party complaint alleges that Capitol agreed to indemnify Earth Tech for Capitol's and its subcontractors' negligence[15] and that "Capitol breached the subcontract by its failure to defend, indemnify and hold harmless Earth Tech in the Carey lawsuit, wherein Plaintiffs allege that Earth Tech is vicariously liable for the acts of Defendant Blash, an employee of Subtier Contractor, Freehold Cartage."  Put more succinctly, Earth Tech alleged that it was being sued for the negligence of FCI, which negligence Capitol had agreed to assume.  These allegations fall squarely within the coverage of the North River policy.  Specifically, the policy covers Capitol for liability Capitol assumes in an "insured contract," which is any "part of any other contract or agreement pertaining to your business . . . under which you [Capitol] assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization."[16]  Capitol did precisely this in its subcontract with Earth Tech; in this contract, it assumed the tort liability of another (FCI) to pay for bodily injury to a third person (the Careys). Accordingly, the third-party complaint's allegations — the four corners of that complaint — fit well

---

[15] Specifically, the subcontract provided that Capitol must "defend, indemnify, and hold harmless" Earth Tech for claims "arising out of the acts, errors, or omissions of [Capitol], its officers, agents, employees, Subtier Contractors, and anyone directly or indirectly employed by them."

[16] The insured contract provision is an exception to the general exclusion for "'[b]odily injury' or 'property damage' for which the insured is obligated to pay as damages by reason of the assumption of liability in a contract or agreement."

within the four corners of the policy and thus North River had a duty to defend Capitol in connection with Earth Tech's third party complaint against Capitol.

North River seeks to avoid this result by arguing, unpersuasively, that the Earth Tech third-party complaint mischaracterized the allegations in the Carey complaint when it said the Careys alleged "Earth Tech is vicariously liable for the acts of Defendant Blash, an employee of Subtier Contractor, Freehold Cartage." Yet, the Carey complaint, read broadly, clearly does assert a claim for vicarious liability against Earth Tech, as it alleges that Blash was "an employee of Freehold Cartage, Inc. and/or Earth Tech, Inc." who was "acting within the scope of his employment with Freehold and/or Earth Tech at all times." Thus, Earth Tech correctly noted a claim for vicarious liability had been made against it, but then correctly sought to refute that claim by noting that Blash was actually an FCI employee. Accordingly, North River's argument that the Earth Tech third party complaint inaccurately summarized the Carey complaint fails.[17]

North River contends the Carey complaint connected Blash with Earth Tech only because the Careys were unaware of Blash's correct employer, and that the Careys never intended to sue Earth Tech for the negligence of another company's employee. In the alternative, North River argues it had no duty to defend because, by the time Earth Tech filed its third party complaint against Capitol, it was clear that Blash was an employee of FCI and that Earth Tech was being sued by the Careys only for its own negligence in directing traffic. North River further contends that, because Capitol did not agree to assume the tort liability of Earth Tech for its own negligence, the insured contract provision in the policy did not apply. These arguments fail to persuade, as they would

---

[17] This conclusion renders it unnecessary to consider the parties' dispute whether the Eight Corners Rule allows an insurer to rely on the underlying complaint attached as an exhibit to a third-party complaint.

require ignoring Virginia's well-established Eight Corners Rule, under which an "insurer is relieved of a duty to defend only when it clearly appears from the initial pleading the insurer would not be liable under the policy contract for *any* judgment based upon the allegations." *Reisen v. Aetna Life & Cas. Co.*, 302 S.E.2d 529, 531 (Va. 1983) (emphasis in original). North River cannot point to anything in the *initial pleading* that would allow it to escape from its duty to defend. Instead, North River must point to facts outside the four corners of the third-party complaint to support its argument that there was no duty to defend.

North River has offered no persuasive authority in support of its proposed rule that an insurer may rely on extrinsic facts to deny its duty to defend when the Eight Corners Rule would otherwise require it to defend. Allowing an insurer to point to facts outside the pleadings to demonstrate that it would ultimately have no duty to *indemnify* as proof that it has no duty to *defend* would render the two duties indistinguishable and thus effectively depreciate the duty to defend. Recognizing this, other federal courts have prudently allowed a breach of the Eight Corners Rule only where the highest court of the relevant jurisdiction has explicitly authorized it.[18] Moreover, many of the state courts that have allowed exceptions to the Eight Corners Rule have done so in circumstances not

---

[18] *See Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 596 (5th Cir. 2006) (stating that the Texas Supreme Court allows extrinsic evidence regarding the duty to defend in very limited circumstances not applicable in the instant case); *Advantage Homebuilding, LLC v. Maryland Cas. Co.*, 470 F.3d 1003, 1013-14 (10th Cir. 2006) (noting that "Kansas law expressly authorizes an insurer to consider extrinsic evidence in determining whether it has a duty to defend"); *Blackhawk-Central City Sanitation Dist. v. Am. Guar. & Liab. Ins. Co.*, 214 F.3d 1183, 1189 (10th Cir. 2000) (refusing to consider extrinsic evidence where Colorado Supreme Court had made clear that "courts may only look at the allegations of the underlying complaint against the insured, and cannot look to any extrinsic evidence"); *Am. Registry of Pathology v. Ohio Cas. Ins. Co.*, 461 F. Supp. 2d 61, 66 (D.D.C. 2006) (noting that "a growing number of jurisdictions" have allowed extrinsic evidence to be reviewed when determining insurer's duty to defend, but finding that District of Columbia law adhered to the Eight Corners Rule).

applicable here.[19]   The Supreme Court of Virginia has never given the green light to breach this

salutary rule; a federal court thus has no basis to do so.   *See Burris Chem., Inc. v. USX Corp.*, 10

F.3d 243 (4th Cir. 1993) (noting that a court sitting in diversity is required "'to apply state law, not,

if we can be persuaded to doubt its soundness, to participate in an effort to change it'") (quoting *Tarr*

*v. Manchester Ins. Corp.*, 544 F.2d 14, 15 (1st Cir. 1976)).   North River's attempt to circumvent its

duty to defend on this ground must therefore fail.

This does not end the analysis, however, as North River also contends that the policy's

"professional services" exclusion applies to bar Capitol's claim for coverage under the policy.   The

policy excludes from the coverage afforded Capitol "'bodily injury' . . . due to the rendering of or

failure to render any professional service."   The policy specifically defines "professional services"

as "operations including consulting, testing, analysis, field services, transportation, treatment and

disposal, documentation and management of waste handling."   North River contends this exclusion

bars coverage for Capitol, as the Careys' accident occurred while Blash was backing his truck into

the St. Marks Refinery for purposes of transporting and disposing waste, a professional service.

---

[19] For instance, many of the courts that have allowed extrinsic evidence have done so to *expand* coverage for insureds, finding that an insurer may not escape its duty to defend a complaint that fails the Eight Corners Test when it is aware of facts that would bring the claim within the scope of coverage.   *See Esicorp, Inc. v. Liberty Mut. Ins. Co.*, 193 F.3d 966, 969 (8th Cir. 1999) (citing *Marshall's U.S. Auto Supply v. Maryland Cas. Co.*, 189 S.W.2d 529, 531 (Mo. 1945); *NWL Holdings, Inc. v. Discover Prop. & Cas. Ins. Co.*, 480 F. Supp. 2d 655, 659-60 (E.D.N.Y. 2007) (citing *Fitzpatrick v. Am. Honda Motor Co.*, 575 N.E.2d 90 (N.Y. 1991)).

This rationale does not support the converse proposition that an insurer may refuse to defend based on extrinsic facts where the Eight Corners Rule would otherwise require a defense.   Indeed, at least one jurisdiction has explicitly rejected this contention.   *See Cowan Sys., Inc. v. Harleysville Mut. Ins. Co.*, 457 F.3d 368, 372 (4th Cir. 2006) (noting that Maryland courts have created an asymmetrical rule by which an insured may introduce extrinsic evidence to demonstrate coverage where the Eight Corners Rule does not otherwise show a duty to defend, but the insurer may not point to extrinsic evidence to deny its duty to defend where the Eight Corners Rule otherwise establishes such a duty).

Capitol counters that the accident was caused by negligent traffic direction, not waste handling, especially given that the truck was empty at the time of the accident.

North River's reliance on the professional services exclusion ultimately fails because the language does not clearly and explicitly exclude the conduct that caused the accident here.  It is axiomatic that, as drafter of the policy, "it is incumbent upon the insurer to employ exclusionary language that is clear and unambiguous." *American Rel. Ins. Co. v. Mitchell*, 385 S.E.2d 583, 585 (Va. 1989).  The Supreme Court of Virginia has also made clear that "language is ambiguous when it may be understood in more than one way or when it refers to two or more things at the same time." *Id.*  Where language is ambiguous, courts must adopt the "interpretation which grants coverage, rather than one which withholds it."  *Id.*

Illustrative of these principles is the Supreme Court of Virginia's opinion in *Granite State Insurance Company v. Bottoms*, 415 S.E.2d 131 (Va. 1992).  There, the insurer attempted to rely on language excluding from coverage bodily injury "due to . . . the rendering of or failure to render . . . any service or treatment conducive to health or of a professional nature" to bar coverage of burns sustained by an incompetent resident of an adult home when she was left unsupervised by a nurse's aide near a hot bath or shower for 20 minutes.  On these facts, the Supreme Court of Virginia rejected the insurer's argument that bathing a resident in an adult home was clearly "treatment conducive to health," finding the exclusionary language ambiguous because it was "so broad that it may be understood in more than one way; indeed, it may be construed in many ways." *Id.* at 134. For instance, while the insurer conceded that the "conducive to health" exclusionary language would not bar a claim where a resident slipped on soapy water left on the floor, the court noted that it is indeed "'conducive to health' to keep hallways free of water and other impediments to safety." *Id.*

-14-

at 135.   Because the exclusionary language was ambiguous, the court "construe[d] the policy language in a manner which grant[ed] coverage" and upheld the trial court's judgment for the insured. *Id.* at 135.   *See also Smith v. Allstate Ins. Co.*, 403 S.E.2d 696, 697-98 (Va. 1991) (finding that "[i]t is not incumbent upon us to resolve the parties' dispute as to the effect of" the exclusionary language at issue, but rather "[i]t was incumbent upon the insurer to employ exclusionary language clear enough to avoid any such ambiguity, if it wished to exclude coverage") (citing *St. Paul Ins. v. Nusbaum & Co.*, 316 S.E.2d 734, 736 (Va. 1984)).

These principles apply equally here to bar North River's reliance on the professional services exclusion, because "operations including consulting, testing, analysis, field services, transportation, treatment and disposal, documentation and management of waste handling" is so broadly and ambiguously phrased that it may be construed in many ways, including both to cover and to bar coverage for the instant accident.   The breadth and ambiguity of the exclusion are easily illustrated. North River concedes that the language is broad, but contends it is not ambiguous; rather, North River argues that the policy was meant, and should be read, to cover only injuries sustained at Capitol's offices, such as slip and fall accidents.   Yet, the exclusion's broad language may also reasonably be read to bar office slip and fall injuries.   For example, this exclusionary language could be read to bar coverage for the injuries of an office worker who dropped a heavy box of waste handling documents on her foot, simply because it involved "documentation . . . of waste handling." Similarly, an individual who tripped at the office on her way to test or analyze waste could be viewed to be engaged in "testing [and] analysis . . . of waste handling."   In short, because Capitol is in the business of waste handling, the exclusionary language is sufficiently ambiguous that it reasonably could be read to bar coverage for *any* claim, even the slip and fall claims North River concedes are

beyond the scope of the exclusion.

On the other hand, this language is sufficiently ambiguous to be read as inapplicable to the accident that occurred here.  Arguably, this was merely an automobile accident that in no way involved "operations including . . . transportation . . . of waste handling."  Rather, the Careys' injuries were sustained during a car accident with an empty truck that happened to be backing into a site for the purpose picking up waste for disposal. In short, because "waste handling" is not involved in driving an empty truck, the professional services exclusion does not clearly apply to the accident here.

Also unpersuasive as a violation of the Eight Corners Rule is North River's reliance on its underwriting documents to demonstrate that the professional services exclusion applies.  In this regard, North River points to the fact that Capitol had a professional services policy with AIG as evidence that the North River policy was intended to cover only office injuries.  Yet, courts have found that existence of other coverage alone does not "win the day for [the insurer] if the [contested policy] could be construed to cover the same risks." *Prisco Serena Strum Architects, Ltd. v. Liberty Mut. Ins. Co.*, 126 F.3d 886, 893 (7th Cir. 1997).  Put differently, an insurer may not point to another policy to try to make its own ambiguous policy language clearer.  If North River intended to provide coverage for only those slip-and-fall type injuries that occurred at Capitol's offices, it should have said so clearly, rather than using the ambiguous language it selected for use in the policy's professional services exclusion.[20]  Accordingly, the ambiguity must be resolved in favor of Capitol,

---

[20] Nor is North River's reliance on the differences in premiums between the AIG and North River policies persuasive.  The AIG policy premium was $43,735, as compared with $1,601 for the North River premium.  This does not prove North River's contention that its policy excluded coverage for routine car accidents that did not involve any waste-related injuries.  Indeed, North River concedes that the AIG "professional and pollution policy was maintained . . . specifically to

and the professional services exclusion is inapplicable.

In sum, North River had a duty to defend Capitol based on the allegations in the Earth Tech third-party complaint against Capitol and the four corners of the insurance policy, and neither the contract nor the professional services exclusions relieved it of the duty to defend.  If North River believed it ultimately had no duty to *indemnify* Capitol because of these exclusions, it should have defended under a reservation of rights.  *See Couch on Insurance* § 172:2 (3d ed. 1995).  North River is thus liable to Capitol for its costs and attorneys fees associated with defending the Earth Tech complaint.[21]

## IV.

The question whether North River had a duty to indemnify Capitol is governed by different principles.  Unlike the duty to defend, which is resolved solely by examining the insurance policy and third-party complaint's allegations, "a duty to indemnify 'springs from the facts actually discovered or proven at trial.'"  *Morrow Corp. v. Harleysville Mut. Ins. Co.*, 101 F. Supp. 2d 422, 435 (E.D. Va. 2000) (quoting *Liberty Life Ins. Co. v. Travelers Indem. Co.*, 181 F.3d 88, 1999 WL 417436, at *4 (4th Cir. 1999) (unpublished)).  This is so because "[t]he duty to indemnify . . . refers to an insurer's responsibility to pay a monetary award when its insured has become liable for a

---

cover *the waste handling exposures* of Capitol and its subcontractors," *e.g.*, damages caused by waste spillages.  North River Supplemental Memorandum, at 5.  Hence, even if the AIG policy were not barred by the Eight Corners Rule, it would not support North River's position.

[21] This includes the costs of defending non-covered claims.  *See Lerner v. Gen. Ins. Co. of Am.*, 245 S.E.2d 249, 252 (Va. 1978) (holding that the duty to defend extends to potentially covered claims and all ancillary non-covered claims); *Perdue Farms, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 448 F.3d 252, 258 (4th Cir. 2006) (noting that, under Maryland law, "if an insurance policy potentially covers any claim in an underlying complaint, the insurer . . . must typically defend the entire suit, including non-covered claims").

covered claim." *Perdue Farms, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 448 F.3d 252, 257-58 (4th Cir. 2006) (applying Maryland law).  It follows that, even if an insurer breaches the duty to defend, "[i]t remains free . . . to argue that the assumed liability was not in actuality covered under its policy, and thus no duty to indemnify arises." *Western Alliance Ins. Co. v. Northern Ins. Co. of N.Y.*, 176 F.3d 825 (5th Cir. 1999) (applying Texas law); *see also Perdue Farms*, 448 F.3d at 257-58; 43 *Am. Jur. 2d. Insurance* § 684.

In this regard, the current factual record is insufficiently developed to warrant summary judgment for either party.  North River has a duty to indemnify Capitol in the Earth Tech action only if Capitol demonstrates that it was found liable to Earth Tech for bodily injury actually covered by the North River policy.  Hence, if in the underlying suit it is determined that Earth Tech's liability to the Careys was based only on Earth Tech's negligence and thus Capitol's liability to Earth Tech was based only on breach of contract, the insured contract provision would not apply and North River would have no duty to indemnify.[22]  Yet, the Florida court apparently has not yet ruled on whether Capitol breached its duty to indemnify Earth Tech.  Rather, summary judgment has been granted in favor of Capitol on all but Counts I (breach of contract) and IV (contractual indemnity) of Earth Tech's third party complaint.  Summary judgment on Count I was granted in favor of Earth Tech on the ground that Capitol breached its subcontract with Earth Tech by failing to procure

---

[22] In this respect, Capitol contends that North River is estopped from asserting the contract exclusion as a defense, as North River did not rely on this exclusion in its initial denial of coverage. North River cites no Virginia law in support of this proposition, and none has been found.  While North River initially relied on the professional services exclusion to deny coverage, it asserted its reliance on the contract exclusion once Capitol made clear it believed the insured contract provision granted it coverage.  Capitol suffered no detriment from North River's initial reliance on the professional services exclusion, but instead was well aware before it filed this action that North River also relied on the contract exclusion.  *Cf.* 44 *Am. Jur. 2d Insurance* § 1627.  Thus, estoppel is inappropriate.

insurance naming Earth Tech as an additional insured.  The Florida court did not find that Capitol was liable on Count I because it failed to indemnify Earth Tech in the Carey complaint; rather, the court ignored the portion of Count I in which Earth Tech alleged Capitol breached its contract by failing to indemnify Earth Tech.  Similarly, no ruling has yet issued on Count IV, the contractual indemnity claim.

Because the record is insufficiently developed regarding Capitol's liability to Earth Tech on the indemnification claims, a ruling on the cross-motions for summary judgment on the duty to indemnify is premature and must be deferred.

## V.

Finally, Capitol alleges that it is entitled to recover costs and attorney's fees in connection with this lawsuit because North River acted in bad faith in denying coverage under the Policy.  Under Va. Code. § 38.2-209, an insured may recover costs and reasonable attorney fees if "the insurer, not acting in good faith, has either denied coverage or failed or refused to make payment to the insured under the policy."  Virginia courts apply a reasonableness standard to determine whether an insurer acted in bad faith.  Key factors in this reasonableness inquiry include "whether reasonable minds could differ in the interpretation of policy provisions defining coverage and exclusions; whether the insurer had made a reasonable investigation of the facts and circumstances of the insured's claim; [and] whether the evidence discovered reasonably supports a denial of liability." *Nationwide Mut. Ins. Co. v. St. John*, 524 S.E.2d 649, 651 (Va. 2000).

Given these principles, Capitol's bad faith claim fails.  There is nothing in the record to indicate that North River's denial of Capitol's claim was made in bad faith.  While its reliance on the contract and professional services exclusions were ultimately incorrect, North River's

interpretation of the policy was not so unreasonable as to demonstrate bad faith. *See CUNA Mut.*
*Ins. Soc. v. Norman*, 375 S.E.2d 724, 727 (Va. 1989) (reversing a district court's finding of insurer's
bad faith because "the issue of coverage [was] reasonably debatable"). The coverage questions
raised by the facts of this case were by no means obvious based on settled law, and thus North
River's denial of coverage was reasonable. *See id.* (finding reasonable an insurer's reliance on a
policy interpretation that was a matter of first impression in Virginia).

Capitol contends that North River's bad faith is evidenced by its delay in responding to
Capitol's coverage claim. It points to the fact that its February 3, 2006 coverage request listed both
its U.S. Fire and North River policy numbers, but that North River did not disclaim coverage under
its policy until June 2006. Yet, the record reflects that Crum & Forster, North River's parent
company, mistakenly believed Capitol to be making an amended request for coverage under only its
U.S. Fire policy, and therefore made a coverage determination only based on that policy. Once
Kelso made clear that Capitol also sought a coverage determination under the North River policy,
North River investigated and responded in less than three months. Capitol has not shown that this
response time was unreasonable. Hence, there is no reason to believe that North River's delays in
responding to Capitol's requests were made in bad faith.


In sum, North River breached its duty to defend Capitol against the Earth Tech third party
complaint. Summary judgment must therefore be granted in favor of Capitol on this portion of
Count I, and North River's motion for summary judgment in this respect must be denied.
Accordingly, North River is liable to Capitol for $40,866.99, its fees and expenses associated with
defending that suit. Capitol did not prove, however, that North River acted in bad faith in denying

Capitol a defense, and thus summary judgment must be granted in favor of North River and against Capitol on Count III.

Summary judgment on the question whether North River has a duty to indemnify Capitol is premature at this time, as resolution of that issue depends on the Florida court's ruling on the nature of Capitol's liability to Earth Tech, if any, under the third-party complaint.  Accordingly, a ruling on the parties' cross-motions for summary judgment on that issue must be deferred.

An appropriate Order will issue.


_____/s/_____

Alexandria, Virginia                                           T. S. Ellis, III
February 28, 2008                                          United States District Judge